## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

KIMBERLY VALE,

               Plaintiff,

v.                                  Case No. 3:11-cv-00632 (CSH)

CITY OF NEW HAVEN,

               Defendant.                 JULY 19, 2016

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**HAIGHT, Senior District Judge:**

       Plaintiff Kimberly Vale filed this age discrimination case after she was denied a position with the New Haven Police Department following training as a recruit. On March 2, 2015, Defendant City of New Haven filed a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure [Doc. 116]. Plaintiff opposed that motion. The Court heard oral argument. Plaintiff has filed a Second Motion for Oral Argument [Doc. 143]. This Ruling decides both motions.

### I.

       Vale applied to join the New Haven Police Department on two separate occasions. She was rejected twice, and in this action complains about each rejection.

       The operative pleading is the Second Amended Complaint [Doc. 113], which Plaintiff filed by permission the Court granted in an order [Doc. 112]. There are three counts, each asserting claims under a Connecticut statute. Count One alleges age discrimination, in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), C.G.S. § 46a-60(a)(1). Count Two alleges retaliation, in violation of a general state statute, C.G.S. § 31-51q. Count Three alleges retaliation, in violation of a separate CFEPA provision, § 46a-60(a)(4).

1

Vale filed her initial complaint, invoking these Connecticut statutes, in a Connecticut state court. The Defendant City removed the action to this Court, invoking federal question subject matter jurisdiction. Vale moved for a remand, on the ground that the complaint did not allege a cause of action arising under federal law, and the parties' citizenship was not diverse.  Judge Dorsey denied Vale's remand motion in an unreported Ruling. Doc. 18.  He noted that "Vale alleges that the New Haven Police Department violated [Conn. Gen. Stat.] section 31-51q by retaliating against her for allegedly exercising her free speech rights as guaranteed by the Connecticut Constitution by complaining about overtime to the union." Slip op. at 2-3. Judge Dorsey held that "by pleading a section 31-51q cause of action in her Complaint, Vale raised a federal question sufficiently substantial to confer federal question jurisdiction." *Id.* at 3.  He considered himself bound by the Second Circuit's holding in *Bracey v. Board of Education*, 368 F.3d 108, 114 (2d Cir. 2004) that "[A] federal question is sufficiently substantial to support federal question jurisdiction if the vindication of a right under state law necessarily turns on some construction of federal law" (citation and internal quotation marks omitted), a principle that governed the case, in which (as here) the plaintiff asserted a claim under C.G.S. section 31-51q, .  A "section 31-51q cause of action," the Second Circuit reasoned in *Bracey*, "requires that a court construe federal First Amendment law and evaluate its scope," so that the claim "necessarily turns on some construction of federal law" and is sufficiently substantial to sustain federal subject matter jurisdiction.  368 F.3d at 115-116.

Accordingly, federal jurisdiction over the case at bar is established.  The following discussion considers the Connecticut statutes upon which Vale's claims are based, together with the First Amendment, and the federal Age Discrimination in Employment Act, 29 U.S.C. § 623(a) ("ADEA"), which is also implicated in the action.

Vale's First Amendment claim vests this Court with original jurisdiction.  As for her state law claims, the Court in its discretion exercises supplemental jurisdiction over them.    28 U.S.C. § 1367(a).

## II.

Following discovery, the City of New Haven moved for summary judgment under Rule 56. The facts recounted herein are derived from the parties' Local Rule 56(a)(1) and (a)(2) statements and the attached exhibits. Throughout the following discussion, citations to Local Rule "56(a)(1)" refers to Defendant's statement of the facts. Local Rule "56(a)(2)" refers to Plaintiff's statement. The facts recited in this Part and are undisputed or indisputable, unless noted otherwise.

The case arises out of two unsuccessful attempts by the Plaintiff to become a member of the New Haven Police Department. In 2009, Plaintiff was hired as a police recruit by the New Haven Police Department. During her time as a recruit, she claims she was subjected to discrimination based on her age, and was ultimately required to resign. She subsequently applied a second time to the Police Academy, but was rejected based on subsequent physical and psychological examinations. Plaintiff now sues for discrimination and retaliation in violation of the Connecticut Fair Employment Practices Act, C.G.S. § 46a-60(a)(1), ("CFEPA") and retaliation in violation of C.G.S. § 31-51q.

In September of 2009, Plaintiff Kimberly Vale was hired as police recruit in training by the New Haven Department of Police Service. Loc. R. 56(a)(1) Statement, ¶ 1. The standards and guidelines for the Police Academy (the "Academy") are promulgated by the Connecticut Police Officers Standards and Training Council ("P.O.S.T."). *Id.* at ¶ 2. P.O.S.T. requirements include a comprehensive curriculum of physical training, practical training, and class work. *Id.* at ¶ 7. Upon completion, recruits receive certification as a police officer. *Id.* During the time that the Plaintiff was at the Academy, the Academy was supervised by Captain Redding and Senior Training Officer Robert Strickland, who worked alongside Officer Jason Salgado to train the recruits. *Id.* at ¶ 3. Officer Strickland was a training instructor and makes no hiring or firing decisions. *Id.* at ¶ 5.

While at the Academy, Plaintiff was forty-four years old. Loc. R. 56(a)(1) Statement, ¶ 1. Plaintiff

was not the oldest recruit in her class. *Id.* at ¶ 41. According to the Defendant, Plaintiff, like all other recruits, was subjected to stress inoculation by their training instructors. *Id.* at ¶ 6. This was meant to prepare the recruits for the conditions of patrolling the streets and to "develop mental toughness." *Id.* Defendants assert that comments about Plaintiff's age and whether or not she belonged at the Academy were part of the stress inoculation. However, Plaintiff notes that no other recruit was subjected to statements about their membership in a protected class. Loc. R. 56(a)(2) Statement, ¶ 6. During one lesson, Officer Strickland said "grandma can shoot" in reference to the Plaintiff. Loc. R. 56(a)(1) Statement, ¶ 38. Plaintiff asserts that she was called "grandma" and other references were made to her being old by Officer Strickland throughout the course. Loc. R. 56(a)(2) Statement, p. 6, ¶ 5. She cannot recall specifically when the comments were made, other than to note that they were made on four or five occasions. *Id.*

In addition, Plaintiff claims that during the first week of the academy, Officer Strickland instructed her not to return to class until she had her husband, a member of the police department, speak with him. Loc. R. 56(a)(2) Statement, p. 5 ¶ 1. Plaintiff alleges that when her husband, Armando Vale, called Officer Strickland, Officer Strickland said that Plaintiff was having a hard time in class and that he did not think she would make it. *Id.* at ¶ 2. Furthermore, Plaintiff asserts that Officer Strickland told her husband that Plaintiff was "too motherly." *Id.*

As part of her physical training, Plaintiff was required to complete an obstacle course in a prescribed time. Loc. R. 56(a)(1) Statement, ¶ 8. P.O.S.T. will not certify any recruit who fails to complete the obstacle course in the prescribed time of one minute and forty six seconds. *Id.*; *Id.* at 16. Recruits are allowed two attempts to complete the obstacle course. *Id.* at 9. Before the recruits attempted the obstacle course, Officer Strickland demonstrated the best approaches to each obstacle. *Id.* at ¶ 10.

On March 9, 2010, Plaintiff attempted the test twice. Loc. R. 56(a)(1) Statement, ¶ 17. Plaintiff's time for the first attempt was recorded by Officer Strickland as one minute and forty eight seconds. *Id.* at ¶ 18. At the end of the first administration of the obstacle course, Plaintiff fell down and was not standing. *Id.* at

4

19. Officer Strickland then informed Plaintiff and the other recruits that they must be standing at the end of the course. Loc. R. 56(a)(2) Statement, p. 6, ¶ 9. Plaintiff contends that she would have completed the course in the designated time if she had not been required to stand. *Id.* at ¶ 18. One other recruit also did not complete the course on the first attempt in the allotted time. Loc. R. 56(a)(1) Statement, ¶ 20. Plaintiff alleges that Officer Strickland gave preferential treatment to this recruit that he was having a sexual relationship with, but does not provide any support for this allegation, such as what the preferential treatment was other than "allowing her to complete the course." Loc. R. 56(a)(2) Statement, ¶ 11, ¶ 20. During training, Officer Strickland also administered several tests that were judged on a more subjective basis than the obstacle course, including an arms test and baton and handcuffing training. Loc. R. 56(a)(1) Statement, ¶ 13.

Plaintiff's second attempt at the obstacle course was recorded as one minute and fifty seconds. Loc. R. 56(a)(1) Statement, ¶ 21. Officer Strickland was also responsible for timing the course the second time. *Id.* at ¶ 23. However, he was not the only supervisor there. *Id.* Plaintiff further claims that Officer Strickland, during her second attempt at the course, had her run at the same time as another recruit, Victor Rawlinson. Loc. Rule. 56(a)(2) p. 6, ¶ 10. Plaintiff claims that having two recruits run the course at the same time could have interfered with her time, especially because the two had to pass each other on narrow stairs. *Id.* at ¶ 11.

After Plaintiff failed the course a second time, Officer Strickland notified Captain Redding, who in turn sought guidance from P.O.S.T. Loc. R. 56(a)(1) Statement, at ¶¶ 24–25. P.O.S.T. informed Captain Redding that Plaintiff could not be certified as a municipal police officer under P.O.S.T. regulations. *Id.* at ¶ 26. Captain Redding handled Plaintiff's separation; Officer Strickland was not involved in the separation process. *Id.* at ¶ 28.

During her training, Plaintiff was given a copy of the New Haven Police Academy student handbook, which contained an anti-discrimination and harassment policy. *Id*. at ¶ 42. However, Plaintiff did not report any age discrimination to Officer Strickland's superiors during her time at the Academy. *Id.* at ¶ 43. Plaintiff asserts that she tried to talk to Sergeant Sydnor, the subsequently appointed head of the Academy, but he

refused to listen to her complaint. Loc. R. 56(a)(2) Statement, ¶ 43 During her time as a recruit, Plaintiff kept contemporaneous notes of daily events. Loc. R. 56(a)(1) Statement, ¶ 12. These notes do not contain any references to comments about her age. *Id.*

Plaintiff claims that, in addition, Officer Strickland singled her out for harsh treatment because he believed she had reported unpaid overtime hours of recruits to the Connecticut Department of Labor. Loc. R. 56(a)(2) Statement, p. 7, ¶ 21. Officer Strickland, according to Plaintiff, blamed her for the "catastrophic mess" that resulted. *Id.* However, Plaintiff never reported an overtime issue to anyone. Loc. R. 56(a)(1) Statement, ¶ 44.

Approximately two years later, in October 2011, Plaintiff reapplied to become a police officer. Loc. R. 56(a)(1) Statement, ¶ 29. On September 21, 2012, Plaintiff was informed that she still needed to pass a physical agility and medical examination for her application to be considered. *Id.* at ¶ 30.  During the physical agility test, Plaintiff became ill and was unable to complete the course, but was told, in accordance with the Academy's practice, that she would be given a chance to retake the test after recovering. *Id.* at ¶ 31. Plaintiff was also required to undergo a pre-employment psychological examination. *Id.* at ¶ 32. Mark Kirshner, Ph.D., completed the examination and determined that Plaintiff was "not qualified" for hire as a police officer. *Id.* at ¶ 33. Plaintiff asserts that she was only deemed "not qualified" after it became known that she would have reason to retake the fitness test. Loc. R. 56(a)(2) Statement, ¶ 33. Dr. Kirshner is the same evaluator who performed Plaintiff's first psychological evaluation for admission into the Police Academy in 2009. Loc. R. 56(a)(1) Statement, ¶ 34. In his first evaluation, Dr. Kirshner found her qualified with reservations, though Plaintiff notes that she was never informed that there were any reservations. Loc. R. 56(a)(1) Statement, ¶ 35; Loc. R. 56(a)(2) Statement, ¶ 35.

Plaintiff was notified on October 5, 2012 that she did not meet two of the requirements for admission to the Academy, and that her application would not move forward.  Loc. R. 56(a)(1) Statement, ¶ 36. Captain Redding and Officer Strickland were not involved in the review of her 2011 application. *Id.* at ¶ 37.

6

## III.

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48 (1986). The burden of proof regarding the absence of any genuine issues of material fact rests with the moving party. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (*citing Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir. 1995)). Finally, summary judgment is only proper where no reasonable inference could be drawn in favor of the nonmoving party from the evidence in the record. *Vivenzio*, 611 F.3d at 106 (*citing Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000)) ("It is not the province of the court itself to decide what inferences should be drawn.") Additionally, a moving party "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Services, Ltd. Partnership*, 22 F.3d 1219, 1223–24 (2d Cir. 1994). The Court is also confined to issue-finding at this stage of litigation, rather than issue-resolution. *Id.* at 1224.

Summary judgment may be granted "even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). However, a trial court must be cautious about granting summary judgment when, in a discrimination case, the intent of the employer is at issue. *Id.* "Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Id.*

**IV.**

Count One of the Second Amended Complaint alleges violation of the Connecticut Fair Employment Practices Act ("CFEPA"), C.G.S. § 46a-60(a)(1), a section which prohibits discriminating against an employee on the basis of his or her age.

Connecticut age discrimination law, in relevant part, follows the federal Age Discrimination in Employment Act, 29 U.S.C. § 623(a) ("ADEA"). *See Fasoli v. City of Stamford*, 64 F.Supp.3d 285, 313 (D. Conn. 2014). However, though Connecticut has "often looked to federal employment discrimination law for guidance in enforcing [Connecticut's] antidiscrimination statute, . . . under certain circumstances, federal law defines 'the beginning and not the end of [Connecticut's] approach to the subject.'" *State v. Commission on Human Rights and Opportunities*, 559 A.2d 1120, 1124 (Conn. 1989) (*quoting Evening Sentinel v. National Organization for Women*, 357 A.2d 498, 504 n. 5 (Conn. 1975)).

Connecticut state discrimination law applies the burden shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) for CFEPA age discrimination claims. The framework requires the Plaintiff to first make a *prima facie* case of discrimination, then, if the plaintiff is successful, the burden of proof switches to the defendant to articulate "some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once this reason is provided, the burden of proof returns to the plaintiff to show that the reason is pretextual. *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008).

To establish a prima facie case of age discrimination, a plaintiff must show: "(1) that she was within the protected age group, (2) that she was qualified for the position, [and] (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010) (citation omitted). Furthermore, "[a] plaintiff's burden of establishing a prima facie case is de minimis. The requirement is neither onerous, nor intended to be rigid, mechanized, or ritualistic." *Abdu-Brisson v. Delta Air Lines, Inc.*,

239 F.3d 456, 467 (2d Cir. 2001) (citations and internal quotation marks omitted).

Plaintiff and Defendant argue about how to apply the fourth element. Defendants cite to this Court's opinion in *Fasoli v. City of Stamford*, 64 F.Supp.3d 285 (D. Conn. 2014), for the proposition that to establish the fourth element, a plaintiff must show that her "age was the 'but-for' cause of the adverse employment action." *Fasoli v. City of Stamford*, 64 F.Supp.3d 285, 313 (D. Conn. 2014) (*quoting Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009)). This standard comes from a recent Supreme Court Case regarding ADEA cases. In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), the Supreme Court held that in order to establish a violation of the ADEA, a plaintiff must show that age was the but-for cause of the adverse employment action, not simply a contributing or motivating factor. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 180 (2009). Previously, the "mixed motive" or "motivating factor" standard applied. In *Fasoli*, this Court noted that though neither the Connecticut Supreme Court nor the Appellate Court had addressed whether *Gross*'s "but-for" causation requirement impacted the CFEPA analysis, because the Second Circuit has applied the "but-for" standard to such claims, "the Court continues to do so here until a Connecticut appellate court rules otherwise." *Fasoli*, 64 F.Supp.3d at 313 n. 34; *accord Irizarry v. United Postal Service, Inc.*, 2014 WL 1246684, *11 (D. Conn. Mar. 24, 2014) (Judge Hall) (*citing Gross* in a CFEPA case for the proposition that age discrimination was the "but for" causation of the adverse employment action).

In several cases pre-dating *Fasoli*, Judge Bryant applied the "mixed motive" or "motivating factor" standard after *Gross*. *See Asante-Addae v. Sodexo*, 2015 WL 1471927 (D. Conn. Mar. 31, 2015); *Tremalio v. Demand Shoes, LLC.*, 2013 WL 5445258, at *20–21 (D. Conn. Sept. 30, 2013); *Hasemann v. United Parcel Service of America,* Inc., 2013 WL 696424, *12–13 (D. Conn. Feb. 26, 2013); *Aiello v. Stamford Hosp.*, 2011 WL 3439459 at *27 (D.Conn. Aug. 8, 2011); *and Herbert v. National Amusements, Inc.*, 833 F.Supp.2d 192, 202–03 (D. Conn. 2011); *see also  Sagila v. Chemtura Corp.*, 2015 WL 5795000 (D. Conn. Sept. 30, 2015) (Judge Bolden) (applying mixed-motive standard to CFEPA claim). In *Tremalio*, she noted

9

that the court would "follow existing Connecticut Supreme Court pronouncements on the appropriate standard to employ in applying Connecticut law and apply a contributing or motivating factor analysis to CFEPA claims." *Tremalio*, 2013 WL 5445258, at *21. Judge Bryant also noted that though the Second Circuit had recently applied the "but for" standard, *see Rubinow v. Boehringer Ingelheim Pharms., Inc.,* 496 Fed. Appx. 117, 118 (2d Cir. 2012) (summary order); *Timbie v. Eli Lilly & Co.*, 429 Fed. Appx. 20, 22 n. 1 (2d Cir. 2011) (summary order), "neither the Connecticut Supreme Court nor the Appellate Court have had occasion to rule on the issue, and there is a split of authority at the Connecticut trial court level on this issue." *Id.* at 20 (*comparing Dwyer v. Waterfront Enters.,* CV126032894S, 2013 Conn.Super. LEXIS 1174, at *26–27 (Conn.Super.Ct. May 24, 2013) (declining to apply the holding in *Gross,* and determining that under CFEPA, a plaintiff is only required to prove that age discrimination was a contributing or motivating factor, rather than a "but-for" reason for the adverse employment action); *and Wagner v. Bd. of Tr. for Connecticut State Univ.* No. HHDCV085023775S, 2012 Conn.Super. LEXIS 316, at (Conn.Super.Ct. Jan. 30, 2012); *with Marasco v. Conn. Reg'l Vocational–Technical Sch.,* CV095014324, 2012 Conn.Super. LEXIS 2572, at *15–18 (Conn.Super.Ct. Oct. 15, 2012) (applying the holding in *Gross* to plaintiff's CFEPA claim)).

Plaintiff points the Court to a recent decision by Judge Shea in the District of Connecticut, *Weisenbach v. LQ Management*, 2015 WL 5680322 (D. Conn. Sept. 25. 2015). The court in *Weisenbach* concluded that the "motivating factor" standard still applied to the CFEPA after *Gross*. The court looked to the Connecticut trial courts for guidance, and concluded that the trial courts continued to apply the "motivating factor" standard under the CFEPA, and that no Connecticut appellate court had spoken on the question. *Weisenbach v. LQ Mgmt.*, 2015 WL 5680322, at *7 (D. Conn. Sept. 25, 2015) (*citing Frederick v. Gladeview Health Care Ctr., Inc.*, No. CV116011350, 2014 WL 1876955, at *5 (Conn. Super. Ct. Apr. 10, 2014) ("Until our appellate courts say otherwise, this court will continue to apply the 'mixed motive' and 'pretext' models discussed by our state *Supreme Court in Levy v. Commission on Human Rights & Opportunities*, [236 Conn. 96, 104-05 (1996)]"); *Wagner v. Bd. of Trustees for Connecticut State Univ.*, 2012

WL 669544, at *11 (Conn. Super. Ct. Jan. 30, 2012) (declining to require the "but for" test, and allowing the "contributing or motivating factor" test for a CFEPA age discrimination claim); *see also Dwyer v. Waterfront Enterprises, Inc.*, No. CV126032894S, 2013 WL 2947907, at *8 (Conn. Super. Ct. May 24, 2013) ("in accordance with the liberal construction afforded to CFEPA, [plaintiff] need only plead that his physical disability was a motivating factor in his termination.")). A survey of Connecticut cases since *Weisenbach* confirms that the majority of Connecticut trial courts are still applying the "motivating factor" standard.

Judge Shea noted, as did Judge Bryant, that the Second Circuit has issued two summary orders applying the more demanding *Gross* "but-for" standard to the CFEPA. *See Rubinow v. Boehringer Ingelheim Pharms., Inc.,* 496 Fed. Appx. 117, 118 (2d Cir. 2012) (summary order); *Timbie v. Eli Lilly & Co.*, 429 Fed. Appx. 20, 22 n. 1 (2d Cir. 2011) (summary order). Judge Shea articulated several reasons why he was not bound by these precedents. *Weisenbach*, 2015 WL 5680322, at *8. First, he noted that "neither case, . . . specifically discussed what standard the Connecticut Supreme Court would decide to apply to the CFEPA after *Gross*." *Id.* Second, summary orders do not have precedential effect. *Id.* (citing Second Circuit L. R. 32.1.1(a); *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) ("a summary order is not citable as precedent."). Furthermore, the Second Circuit has also affirmed the application of both the "but-for" test and the "motivating factor" test where the district court found that even under the more lenient "motivating factor" standard the plaintiff failed to show age discrimination. *Id.* (citing *Aiello v. Stamford Hosp.*, 487 Fed.Appx. 677 (2d Cir. 2012). Judge Shea ended his analysis on this point in *Weisenbach* by concluding: "I follow Connecticut trial courts in predicting that the Connecticut Supreme Court will continue to apply the more lenient 'motivating factor' standard to CFEPA discrimination claims." *Weisenbach.*, 2015 WL 5680322, at *8.

While Second Circuit summary orders do not have precedential effect, this "does not mean that the court considers itself free to rule differently in similar cases." *Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011). As the court explained in *Jackler v. Byrne*, "the rationale underlying the Rule is that such orders,

being summary, frequently do not set out the factual background of the case in enough detail to disclose whether its facts are sufficiently similar to those of a subsequent unrelated case to make our summary ruling applicable to the new case." *Id.* at 245. "Implicit in that rationale is that summary orders should be given more weight, where, as here, they address a question of law." *CSL Silicones Inc. v. Midsun Group Inc.*, 2016 WL 1060189, *7 n. 8 (D. Conn. Mar. 15, 2016). However, because the Second Circuit has explicitly recognized the "potential instability in Connecticut law" and sanctioned the application of both tests, this Court agrees with Judge Shea in *Weisenbach*, insofar as this Court is not bound by the Second Circuit's application of the "but for" test in *Rubinow* or *Timbie*, given that the applicable standard does not appear to have been at issue in the case or a decisive aspect of the Court of Appeals' rulings in those cases. This Court adds only that it owes deference to the Second Circuit's summary orders, especially when a question of law is at issue.

Since Judge Shea's *Weisenbach* opinion, several other judges have had the opportunity to consider the question in the District of Connecticut. *See Mendillo v. Prudential Insurance Co. of America*, 2016 WL 146429 (D. Conn. Jan. 12, 2016) (Judge Bolden)*; Larocca v. Frontier Communications, Corp.*, 2016 WL 74393, at *3 (D. Conn. Jan. 6, 2016) (Judge Meyer); *DeAngelo v. Yellowbook Inc.*, 105 F.Supp.3d 166 (D.Conn. 2015) (Judge Crawford); *Delgado v. City of Stamford*, 2015 WL 6675534 (D. Conn. Nov. 2, 2015) (Judge Bolden); *see also Anderson v. Eastern Connecticut Health Network*, 2015 WL 4393552 (D. Conn. Jul. 16, 2015) (Judge Chatigny) (applying "motivating factor" standard to CFEPA claim without discussion); *Gallagher v. Town of Fairfield*, 2015 WL 3453342 (D. Conn. May 29, 2015) (holding plaintiff could not meet either standard). Judge Meyer in *Larocca v. Frontier Communications, Corp.*, 2016 WL 74393, at *3 (D. Conn. Jan. 6, 2016), Judge Crawford in *DeAngelo v. Yellowbook Inc.*, 105 F.Supp.3d 166 (D.Conn. 2015), and Judge Bolden in *Mendillo v. Prudential Insurance Co. of America*, 2016 WL 146429 (D. Conn. Jan. 12, 2016), note that there is uncertainty as to whether the motivating factor test still applies in CFEPA age discrimination cases after *Gross*. *Id.; see also Fetcho v. Hearst Connecticut Post, LLC*, 103 F.Supp.3d

207, 217 (D. Conn. 2015) (Judge Crawford) (noting the uncertainty without deciding which test to apply given other deficiencies in plaintiff's complaint). Both Judge Meyer in *Larocca* and Judge Bolden in *Mendillo*, *Sagila v. Chemtura Corp.*, 2015 WL 5795000 (D. Conn. Sept. 30, 2015), and *Delgado v. City of Stamford*, 2015 WL 6675534 (D. Conn. Nov. 2, 2015) applied the motivating factor test as the less-demanding standard and concluded that the plaintiffs had not met even the motivating factor standard, let alone the but-for standard. Hence, as both Judges noted, it would not have mattered which test they applied. *Id.* Judge Crawford applied both tests and determined that the plaintiff had met even the more-demanding "but for" standard. *DeAngelo*, 105 F.Supp.3d at 181. The Court undertakes this review to emphasize the lack of clarity in Connecticut law as to this question.

The Court in this case need not determine on summary judgment which standard should apply because there is a genuine issue of material fact as to whether Plaintiff was required to leave the Academy on the basis of her age under either standard, including the more stringent but-for standard. "A 'but-for' causation standard requires a plaintiff to show that, but for his [age], his employer would not have inflicted the adverse employment action; however, a plaintiff need not establish that discrimination was the sole reason for the employer's action." *DeAngelo*, 105 F.Supp.3d at 176. Plaintiff argues a "cat's paw" theory of liability. Under that theory, a "nondecisionmaker with a discriminatory motive," in this case Officer Strickland, "dupes an innocent decisionmaker into taking action against the plaintiff." *Saviano v. Town of Westport*, 2011 WL 4561184, *7 (D. Conn. Sept. 30, 2011). To succeed on that scenario, Plaintiff must establish that, but for the actions of her supervisor related to his age-based animus, she would not have been required to resign from the Academy.

Defendant argues that because Plaintiff has also alleged that she was retaliated against because Officer Strickland believed that she was responsible for reporting wage violations to the Connecticut Department of Labor, it follows that her age was not and could not be the "but for" cause of Plaintiff losing her position as a recruit. I do not agree. In a recent post-*Gross* ADEA decision, the Second Circuit held:

13

"The condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employer's *only* consideration, but rather that the adverse employment action *would not have occurred without it*." *Delaney v. Bank of America Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (citation and internal quotation marks omitted; emphases in original).

In the case at bar, a majority of the alleged discriminatory comments made by Officer Strickland concerned the Plaintiff's age. Plaintiff alleges that Officer Strickland called her grandma on approximately five occasions and that he told her husband that she was "too motherly." On the other hand, Plaintiff alleges only one instance of harsh treatment directly referencing the wage issues. The repetitive age-related remarks Vale alleges Strickland directed at her are sufficient, if believed by a jury, to support the inference that whatever else might have been on Strickland's mind or disturbing his psyche at the time, Vale would not have been terminated as a police recruit if she had been, say, twenty years younger. That conclusion would satisfy the "but for" requirement as articulated by the Second Circuit in *Delaney*. In short, an issue of fact is presented which requires trial and precludes summary disposition.

Defendants argue, in addition, that the comments made by Officer Strickland were "stray comments" and thus not capable of sustaining a prima facie discrimination case. Stray comments are "isolated derogatory remarks" that do not create a presumption of discrimination. *Dixon v. International Federation of Accountants*, 416 Fed.Appx. 107, 110 (2d Cir. 2011). Generally, "remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by discrimination." *Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007).

First, the comments made by Officer Strickland, if they occurred as alleged, are hardly isolated. Plaintiff alleges that he called her "grandma" on five or six occasions and called her husband to tell him that she was "too motherly." Describing a woman as excessively "motherly" is directed both at her age and gender, and as this case demonstrates, the adjective is not always welcomed as a saccharine Hallmark tribute.

14

The gravamen of Vale's complaint is that Strickland used the term in conversation with Vale's husband (also a New Haven police officer) in an effort to persuade the husband that Vale was not an appropriate police recruit. In addition, Defendant's argument that Officer Strickland was not a "decision-maker," is disingenuous. *See* Oral Argument Transcript, p. 17. Officer Strickland was responsible for reporting whether or not Plaintiff passed various tests along the way, and thus had control, though indirect, over whether Plaintiff stayed at the academy or left. Coupled with Officer Strickland's harsh treatment of Plaintiff, both in the classroom and in the physical training portion of the course, the comments made by Officer Strickland constitute a genuine issue of material fact as to whether or not they are stray. The Court cannot conclude otherwise at the summary judgment stage.

Defendants also argue that Plaintiff cannot demonstrate the third prong of the *McDonnell* test: that the reasons proffered by the Defendants for Plaintiff's termination are pretextual. Defendant's legitimate and nondiscriminatory reason for Plaintiff's termination is that she failed the obstacle course required to become a police officer on two separate occasions. However, Plaintiff has alleged sufficient facts to make it an appropriate question for the jury whether or not these proffered reasons are pretextual. First, she alleges that Officer Strickland imposed a new requirement that all recruits be standing at the end of the course after Plaintiff ended the course in a sitting position. Though Defendant asserts that Plaintiff would still have been over time, the Court cannot find any evidence in the record to suggest that Plaintiff would have been over the time limit regardless of whether she was standing or sitting. Defendant's conclusory allegation to the contrary cannot defeat Plaintiff's allegation at this stage of the case. Furthermore, Plaintiff alleges that on her second try, Officer Strickland had her run the course at the same time as another recruit, which slowed her as she approached a narrow stair obstacle.

Plaintiff alleges that Officer Strickland undertook to fail her on the obstacle course because of his age-based animus toward her. That accusation poses the issue. The facts pleaded are sufficient, at the summary judgment stage, to raise a genuine question of fact as to whether the reason the City proffers for

15

Vale's termination as a police recruit is pretextual. Summary judgment will accordingly be denied to the CFEPA claim.

## V.

Count Two of the Second Amended Complaint alleges a claim for a violation of Conn. Gen. Stat. § 31-51Q. Section 31-51Q states that "[a]ny employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the [F]irst [A]mendment to the United States Constitution or [parallel provisions of the Connecticut Constitution], provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and employer . . . . " is subject to liability. Conn. Gen. Stat. § 31-51Q. Plaintiff alleges that Defendant Strickland retaliated against her because he believed, wrongly, that she was responsible for reporting wage violations to the Connecticut Department of Labor. Defendants argue that in order to establish a violation of § 31-51Q, a plaintiff must show that he or she actually engaged in a protected activity, a showing the City contends Vale cannot make. On Plaintiff's own account she did *not* engage in the protected activity of reporting wage violations.  Defendants further assert that "the record does not contain any evidence to demonstrate that she was terminated for exercising free speech rights other than her conclusory and conjectured theory." Doc. 116-2, p. 22.

"In order to demonstrate a violation of [Conn. Gen.Stat.] section 31–51Q, a plaintiff must prove that: (1) he was exercising rights protected by the first amendment to the United States Constitution (or an equivalent provision of the Connecticut Constitution); (2) he was fired on account of his exercise of such rights; and (3) his exercise of his first amendment (or equivalent state constitutional rights) did not substantially or materially interfere with his bona fide job performance or with his working relationship with his employer." *Lopez v. Burris Logistics Co.*, 952 F. Supp. 2d 396, 406-07 (D. Conn. 2013) (*citing Kennedy v. Coca–Cola Bottling Co. of New York, Inc.*, 170 F.Supp.2d 294, 299 (D. Conn. 2001)). In construing § 31-51Q, Courts are required to "construe federal First Amendment law and evaluate its scope." *Bracey v. Board*

16

*of Education*, 368 F.3d 108, 116 (2d Cir. 2004) (*quoting D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 101 (2d Cir.)).

Plaintiff urges the Court to take "a common sense approach" to the statute, given that it is a remedial statute which should be interpreted liberally. Doc. 125, p. 19 (*citing Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 492 (1995)). However, this issue can be resolved more directly. In a recent opinion, the Supreme Court held that even where an employer takes an adverse employment action against an individual on the mistaken belief that the individual has engaged in political activity that the First Amendment protects, the employee can still challenge that unlawful action under the First Amendment. *Heffernan v. City of Paterson, New Jersey*, 136 S.Ct. 1412 (2016).  Similarly, Officer Strickland allegedly retaliated against Plaintiff for believed or suspected activity that, if it were true, would be protected by the First Amendment.

Defendant argues, in supplemental briefing requested by this Court, that, in applying *Heffernan v. City of Paterson*, 136 S.Ct. 1412 (2016) to 31-51Q, the Court would be ignoring the plain meaning of the statute and violating Conn. Gen. Stat. § 1-2z. The Connecticut plain meaning rule states, "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Conn. Genn. Stat. § 1-2z. Section 31-51q protects employees who are disciplined or dismissed "on account of the exercise by such employee of rights guaranteed by the [F]irst [A]mendment to the United States Constitution or [parallel provisions of the Connecticut Constitution]." Conn. Gen. Stat. § 31-51Q. Defendant argues that, because 42 U.S.C. § 1983 protects against the "deprivation of any rights", and the Connecticut statute protects against adverse action based on "the exercise . . . of rights," that the interpretation of the broader language of § 1983 is not valuable in understanding § 31-51Q.

However, the Supreme Court, in *Heffernan*, focused on the term "right," rather than the term

17

"deprivation." *Heffernan*, 136 S.Ct. at 1417. The *Heffernan* court asked, "[i]s it a right that primarily focuses upon (the employee's) actual activity or a right that primarily focuses upon (the supervisor's) motive, insofar as that motive turns on what the supervisor believes that activity to be?" *Id.* The Court ultimately concluded that the employer's motive was the relevant factor. Both § 1983 and §31-51Q speak to "rights." The term rights, as used in both statutes, then, has an inherent ambiguity, according to the Supreme Court. Hence, it does not violate the Connecticut plain meaning rule to look further into the question of whether Plaintiff's claims are saved by *Heffernan*.

The Court is not hard-pressed to find examples of courts turning to § 1983 for guidance when applying § 31-51q. *See Bracey*, 368 F.3d at 116 (collecting cases) ("*See, e.g., Cotto v. United Techs. Corp.*, 48 Conn.App. 618, 629, 711 A.2d 1180, 1186 (1998) ('In deciding whether the allegations of the plaintiff's complaint [under section 31–51q] state a cause of action for the deprivation of a constitutionally protected right, it is instructive to review federal and state cases arising under 42 U.S.C. § 1983 because § 31–51q is analogous.'); *Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 778–79, 734 A.2d 112, 121 (1999) (looking to *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and *Luck v. Mazzone*, 52 F.3d 475 (2d Cir.1995), to determine whether section 31–51Q applies to speech about private matters); *Andersen v. E & J Gallo Winery*, No. H 85–295(JAC), 1985 WL 134, at *3, 1985 U.S. Dist. LEXIS 14063, at *15–*16 (D.Conn. Nov. 7, 1985) (interpreting section 31–51Q by 'turn[ing] for guidance to cases involving claims brought by public employees alleging termination of employment in violation of their First Amendment Rights,' looking, inter alia, to *Connick*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)); *D'Angelo v. McGoldrick*, 239 Conn. 356, 360 n. 5, 685 A.2d 319, 322 n. 5 (1996) (explaining that section 31–51Q 'encompasses rights guaranteed by the first amendment to the United States constitution')").

As the Court is instructed to turn to federal law when interpreting § 31-51q, the fact that the Plaintiff did not in reality engage in the protected activity does not invalidate her claim. Applying *Heffernan* to the case at hand, it is sufficient for the 31-51Q claim to survive summary judgment that there is a genuine issue

of material fact as to whether Plaintiff was discriminated against because her supervisor believed that she had engaged in activity protected by the First Amendment.

## VI.

Plaintiff has also alleged retaliation under Connecticut General Statutes § 46a-60(a)(4). Defendant asserts that Plaintiff has alleged two separate claims of retaliation: first, that she was retaliated against because the Police Department believed that she reported unpaid overtime to the Connecticut Department of Labor, and second, that she was retaliated against for filing a claim with the CHRO in 2010 concerning her separation from the training program. The Court can only find reference to the second of these allegations in the Amended Complaint, but will analyze both.

Under the CFEPA, "a plaintiff must establish a *prima facie* retaliation claim by showing: (1) the plaintiff was engaged in protected activity; (2) the alleged retaliator knew that the plaintiff was involved in such activity; (3) an adverse decision or action was taken against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action." *Adams v. Festival Fun Parks, LLC*, 2013 WL 951710, at *14 (D. Conn. Mar. 12, 2013). Like a discrimination claim, after the plaintiff has established a *prima facie* case of retaliation, the burden shifts to the Defendants to articulate a legitimate reason for the action at issue. *Hall v. Family Care Home Visiting Nurse and Home Care Agency, LLC*, 696 F.Supp.2d 190, 202 (D. Conn. 2010). The burden then shifts back to Plaintiff to prove that the reason provided by the Defendants was pretextual. *Id.*

### A.

To the extent that Plaintiff asserts a retaliation claim based on the reporting of the overtime wage violations to the Connecticut Department of Labor, that claim must fail. Connecticut General Statutes § 46a-60(a)(4) protects against an employer discriminating against an individual "because such person has opposed any discriminatory employment practice or because such person has filed a complaint [regarding discriminatory practices]. . . ." C.G.S. § 46a-60(a)(4). A discriminatory practice is defined within the statute

19

as discriminating agaisnt an individual because of their "race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability or physical disability." This statute protects against retaliation based on allegations of discrimination, rather than retaliation based on reporting wage violations.

**B**.

The Defendant challenges, with regards to the *prima facie* case of retaliation for the filing of the 2010 CHRO claim, that there is a causal connection between the protected activity and the adverse employment action. The Defendant also argues that Plaintiff, even if she could establish a *prima facie* case of retaliation, cannot prove that the reasons given for her rejection of her application for the police academy, namely that she failed the agility test and the psychological evaluation, are pretextual. Plaintiff does not respond in her brief to these arguments.[1] The Court, finding no causal connection, declines to reach the question of whether the reasons given by the Defendant are pretextual.

Defendant argues that the record does not support a causal connection between the filing of Plaintiff's 2010 CHRO claim and the dismissal of her second application to the police academy in 2012. Defendant cites to several cases where no causal connection was found when there was nearly a year between a plaintiff's protected activity and the adverse employment action taken against them. *See White v. City of Middletown*, 45 F.Supp.3d 195 (D. Conn. 2014); *Gorman-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545 (2d Cir. 2001); *O'Hazo v. Bristol-Burlington Health Dist.*, 599 F.Supp.2d 242, 261 (D. Conn. 2009). Defendant asserts, given the two years between the filing of the CHRO claim and the dismissal of Plaintiff's application, causation cannot be established.

A plaintiff may establish a causal connection between an adverse employment action and a protected

---

[1] The Court notes that when a counseled party responds only in part to a motion for summary judgment, the court "may . . . infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." The Court, given counsel for Plaintiff's arguments on Count Three at oral argument, declines to find that this count was abandoned.

activity by showing that the adverse employment action occurred close in time to the adverse action. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–47 (2001). However, in the Second Circuit, courts have "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a [protected activity] and an allegedly retaliatory action." *Gorman-Bakos*, 252 F.3d at 554. "Where there are longer gaps in time between protected activity and adverse employment action, the inference of causation may be inferred from the fact that the employer was waiting for the opportune time to retaliate." *White*, 45 F.Supp.3d at 219. Courts may exercise their judgment about the permissible inferences to be drawn from temporal proximity in the context of a particular case. *See Espinal v. Goord*, 558 F.3d 119 (2d Cir. 2009).

The considerable majority of cases in this circuit suggest that two years is too long to support a causal connection between a protected activity and an adverse employment action. *See Altieri v. Albany Public Library*, 172 Fed.App'x. 331, 333 (2d Cir. 2006) ("[A] causal connection cannot plausibly be inferred in this case because . . . a twenty-one month interval separates plaintiff's protected activity and the first action of alleged retaliation."); *Morris v. Lindau*, 196 F.3d 102, 113 (2d Cir. 1999) (holding two years between discharge and protected action insufficient to demonstrate a causal connection); *Cronin v. St. Lawrence*, 2009 WL 2391861, *5 (S.D.N.Y. Aug. 5, 2009) ("The passage of eleven months is, to say the least, at the very outer limit of the amount of time that is considered sufficient to establish causation."). "[I]n the absence of direct evidence of retaliation, the fact that a significant period of time has lapsed between the speech and the challenged action militates against an inference of a causal connection." *Fisher v. Helt* , 2006 WL 861006, *4 (D. Conn. Mar. 30, 2006).

Here, there is no direct evidence of retaliation. No showing was made that the officers involved in the review of Plaintiff's second application to the police academy were involved in the complaint to the CHRO or were even aware of the complaint. However, the Court recognizes this would have been the first opportunity for the police academy to retaliate against the Plaintiff after the complaint was filed with the

CHRO. But, given the extended period of time between the two events and the absence of evidence that the officers who rejected Plaintiff's application had any involvement with or knowledge of the CHRO complaint, the Court cannot find genuine issue of fact as to a causal connection between the 2010 CHRO complaint and the denial of plaintiff's second application to the police academy. Summary judgment as to the CFEPA will be granted.

## VII.

For the foregoing reasons, the pending Motions are decided as follows:

1. Defendant's Motion [Doc. 23] for Summary Judgment dismissing the Plaintiff's Second Amended Complaint is DENIED IN PART AND GRANTED IN PART.  Specifically, the Motion is DENIED as to Count One and Count TWO, and GRANTED as to Count Three.

2. Plaintiff's Second Motion [Doc. 143] for Oral Argument is DENIED AS MOOT.

This case will be marked Trial Ready when the parties have submitted and the Court has approved a Joint Trial Memorandum in compliance with Local District Civil Rule 16, the District's Standing Order Regarding Trial Memoranda in Civil Cases, and the Joint Trial Memorandum – Instructions promulgated by this Court (rev. 09/2013).  Counsel should make that joint submission not later than August 19, 2016.

It is SO ORDERED.

Dated: New Haven, Connecticut
July 19, 2016

_/s/ Charles S. Haight, Jr._
Charles S. Haight, Jr.
Senior United States District Judge